*349 OPINION OF THE COURT
Ciparick, J.
The issue presented on this appeal is whether a partially prevailing petitioner may recover attorney’s fees from the State pursuant to CPLR article 86, the Equal Access to Justice Act (State EAJA). This petitioner is not entitled to a fee award because it is not a "prevailing party” within the meaning of the State EAJA and the State’s position in this litigation was substantially justified.
In October 1991, respondent Department of Social Services amended 18 NYCRR 505.7, changing the Medicaid payment methodology for certain diagnostic laboratory tests performed by independent laboratories. 18 NYCRR 505.7 (g) (4) provides:
"Payment for laboratory services provided by independent laboratories will be made only for individually ordered tests. No payment will be made for tests ordered as groupings or combinations of tests or for individual tests ordered on a laboratory order form issued by an independent laboratory which also contains an order for one or more groups or combinations of tests. Each test must be separately ordered by a qualified practitioner as defined in paragraph (b) (3) of this section.”
*350 Prior to the amendment, independent laboratories were entitled to receive payment for tests ordered by physicians on preprinted laboratory requisition forms containing "panels” or "profiles.” Panels are groups of tests conducted on a single specimen, and profiles are groups of tests performed for the purpose of assessing the function of a particular body organ or tissue. Although laboratory tests could be ordered singularly, the practice of ordering entire groups of tests in panels and profiles had become widespread, leading respondent to conduct an investigation which revealed that laboratories were creating panels and profiles, some of which included as many as 15 tests, that physicians were ordering out of convenience rather than medical necessity. In an effort to curb this wasteful practice, which inured to the benefit of independent laboratories at taxpayer expense, respondent amended 18 NYCRR 505.7.
Petitioner, an association of independent laboratories, and an opponent of the amendment throughout the promulgation process, requested an interpretation of the amendment prior to its implementation, submitting the following question:
"1. May tests be ordered informally by grouping them together under a profile heading so long as each component test is individually ordered?”
Respondent answered the question by stating that American Medical Association-approved testing categories would be considered acceptable as "headers” on preprinted order forms; however, all tests included in such categories would have to be individually ordered for reimbursement purposes.
Petitioner commenced this CPLR article 78 proceeding alleging that the amended regulation lacked a rational basis, violated the Equal Protection Clauses of the State and Federal Constitutions, and was being interpreted by respondent in a manner inconsistent with its plain language. Supreme Court granted the petition to the extent of declaring section 505.7 (g) (4) null and void on the ground that it violated petitioner’s equal protection rights. The Court also declared that respondent’s interpretation of the amended regulation was arbitrary and capricious. Petitioner was awarded costs, disbursements and attorney’s fees pursuant to 42 USC §§ 1983 and 1988.
The Appellate Division modified by reversing so much of Supreme Court’s judgment as declared 18 NYCRR 505.7 (g) (4) to be invalid and awarded counsel fees to petitioner. The Appellate Division declared that the challenged regulation *351 "has not been shown to be invalid or unconstitutional” (194 AD2d 189, 194). The appellate Court held that a rational basis existed for the amended regulation, and for distinguishing between independent and hospital laboratories therein: "[T]he regulation’s focus on independent laboratories is based upon the proportion they contribute to the problem and it being clear that such is a valid basis for disparate treatment, we discern no equal protection violation” (194 AD2d, at 192 [citations omitted]).
The Court, however, agreed with petitioner that respondent’s interpretation of its regulation as permitting the grouping of tests only in categories approved by the AMA was irrational and inconsistent with the plain language of the amended regulation, which "contains no prohibition of any particular grouping on laboratory order forms and, in fact, DSS had stated previously that the amendment would not require any change in the groupings of tests on an order form as long as they were ordered individually” (id., at 193). Finally, the Court concluded that there was no basis for an award of counsel fees pursuant to 42 USC § 1988 because petitioner was denied no constitutional right. Nor was it persuaded under the circumstances that petitioner was entitled to counsel fees pursuant to CPLR article 86 (id.).
I
The State EAJA provides that "a court shall award to a prevailing party, other than the state, fees and other expenses incurred by such party in any civil action brought against the state, unless the court finds that the position of the state was substantially justified or that special circumstances make an award unjust” (CPLR 8601 [a]). The statute was enacted to "improv[e] access to justice for individuals and businesses who may not have the resources to sustain a long legal battle against an agency that is acting without justification” (Governor’s Approval Mem, L 1989, ch 770, 1989 NY Legis Ann, at 336). The State EAJA was modeled on the Federal Equal Access to Justice Act (28 USC § 2412 [d] [1] [A]) "and the significant body of case law that has evolved thereunder” (CPLR 8600).
II
Prevailing Party
Petitioner contends that it meets all of the requirements for an award of counsel fees under the State EAJA. Petitioner *352 argues that it is a "prevailing party” within the meaning of the State EAJA because it succeeded in correcting respondent’s overbroad interpretation of its own regulation.
Four requirements must be met before a court can award fees to a private litigant under the Federal EAJA: (1) the claimant must demonstrate that it is an eligible party under the statute (see, 28 USC § 2412 [d] [2] [B]); (2) the claimant must be a "prevailing party”; (3) the Government’s position must not be "substantially justified”; and (4) there must not exist any special circumstances that would make an award unjust (see, Commissioner, Immigration & Naturalization Serv. v Jean, 496 US 154, 158). The "prevailing party” standard has been described as a "generous formulation that brings the plaintiff only across the statutory threshold” (Hensley v Eckerhart, 461 US 424, 433). Congress intended that the term "prevailing party” be given a definition "consistent with the law that has developed under existing statutes” (HR Rep No. 96-1418, 96th Cong, 2d Sess, at 11, reprinted in 1980 US Code Cong & Admin News 4984, 4990; see, Hensley v Eckerhart, 461 US 424 [same standard is generally applicable in all cases in which Congress authorized fee shifting to the "prevailing party”]), and contemplated that a party could be deemed prevailing "even if he does not ultimately prevail on all issues” (1980 US Code Cong & Admin News, at 4990).
The case law formulation that has developed around the term "prevailing party” considers whether the parties " 'succeeded] on any significant issue in litigation which achieve[d] some of the benefit the parties sought in bringing suit’ ” (Hensley v Eckerhart, 461 US 424, 433 [quoting Nadeau v Helgemoe, 581 F2d 275, 278-279]; see, Texas Teachers Assn. v Garland School Dist., 489 US 782; Green v Bowen, 877 F2d 204; Matter of Centennial Restorations Co. v Abrams, 202 AD2d 721; Matter of NANCO Envtl. Servs. v New York State Dept. of Envtl. Conservation, 149 Misc 2d 991, 994-995). Despite the Supreme Court’s decision in Hensley (supra), the Fifth and Eleventh Circuit Courts of Appeals developed a stricter standard for determining prevailing party status, which required that a party succeed on the "central issue” in the litigation and receive the "primary relief sought” (see, Texas Teachers Assn. v Garland School Dist., 489 US 782, 784 [citing Simien v San Antonio, 809 F2d 255; Martin v Heckler, 773 F2d 1145]).
*353 The Supreme Court rejected this approach in Texas Teachers Assn., noting that the "central issue” test was "directly contrary to the thrust” of its decision in Hensley, and was inconsistent with congressional intent contemplating fee awards to partially prevailing parties who succeeded on an important matter in the course of litigation (489 US, at 790). The Court opined that the central issue test, with its corresponding search for the primary and tangential issues in the lawsuit, "is essentially unhelpful in defining the term 'prevailing party’ ”, because it requires "focusing on the subjective importance of an issue to the litigants”, and would mire courts in questions which depend largely on the mental state of the parties (id., at 791). The Court reaffirmed that the standard set forth in Hensley is the appropriate one for determining whether a party has "crossed the threshold to a fee award of some kind” (id., at 792).
We must yet determine whether the Federal EAJA’s "generous formulation” for ascertaining prevailing party status should also govern under the State EAJA and for purposes of this case. This inquiry is necessary because, although the State EAJA purports to be modeled after the Federal act, the Legislature departed from the Federal model in certain significant respects.
For example, the State EAJA defines the term "prevailing party” as a "plaintiff or petitioner in the civil action against the state who prevails in whole or in substantial part where such party and the state prevail upon separate issues” (CPLR 8602 [f]). This language is not derived from the Federal EAJA, which contains no statutory definition of "prevailing party”. Although the legislative history is silent regarding the import of the definitional phrase at issue, the Legislature’s reference to success on separate issues is significant because it indicates that the degree of success obtained by a plaintiff in relation to the other goals of the lawsuit is a threshold factor in determining eligibility for a fee award of any kind.
As to the degree of success required, i.e., the meaning of the term "in substantial part”, a problem of statutory construction is presented. As the Supreme Court noted in construing the word "substantial” in the context of the EAJA’s "substantially justified” requirement,
"the word 'substantial’ can have two quite different — indeed, almost contrary — connotations. On the one hand, it can mean '[considerable in *354 amount, value, or the like; large,’ Webster’s New International Dictionary 2514 (2d ed. 1945) — as, for example, in the statement, 'He won the election by a substantial majority.’ On the other hand, it can mean '[t]hat is such in substance or in the main,’ ibid. — as, for example, in the statement, 'What he said was substantially true’ ” (Pierce v Underwood, 487 US 552, 564).
Although the legislative history offers no definitive elucidation regarding which of the two possible meanings of the word "substantial” the Legislature intended, the Legislature’s departure from the Federal EAJA in our view evinces an intent to impose a stricter standard for demonstrating prevailing party status under the State EAJA than under its Federal counterpart. In approving the bill, the Governor stated that "a program of providing recompense for the cost of correcting official error is highly desirable as long as it is limited to helping those who need assistance, it does not deter State agencies from pursuing legitimate goals and it contains adequate restraints on the amount of fees awarded” (1989 NY Legis Ann, at 336 [emphasis added]). The Governor noted that he had vetoed similar bills in the past because they lacked "necessary safeguards”. This bill was different because it contained "appropriate limits on the types of individuals and organizations that may recover attorneys’ fees” (id.).
Among the "appropriate limits” to which the Governor specifically referred was the fact that only "plaintiffs or petitioners (not defendants)” may recover fee awards (id.). The Federal EAJA, by contrast, provides for fee shifting against the United States without distinguishing whether the successful litigant was the plaintiff or defendant in the action (see, 28 USC § 2412 [d] [1] [A]). Additionally, the Governor noted with approval that only a limited class of plaintiffs could seek fee awards under the statute: "1) individuals who have a net worth of less than $50,000 (excluding the value of their primary residence); 2) owners of businesses with fewer than 100 employees; and 3) not-for-profit corporations” (1989 NY Legis Ann, at 336). Indeed, one of the prior bills vetoed by the Governor provided that "small businesses” employing up to 500 employees and possessing a net worth of up to $5 million would be eligible for fee awards (see, 1983 S434-A, Veto No. 71). It is noteworthy that the Federal EAJA defines an eligible party more expansively than the State EAJA: "(i) an individual whose net worth did not exceed $2,000,000 at the time the *355 civil action was filed, or (ii) any owner of an unincorporated business, or any partnership, corporation, association, unit of local government, or organization, the net worth of which did not exceed $7,000,000” (28 USC § 2412 [d] [2] [B]).
Thus, as it specifically relates to the term "prevailing party”, the legislative history suggests that the State EAJA’s departure from the Federal model was intended to limit the State’s liability for fee awards. The methodology chosen to effectuate this intent was the constriction of the class of plaintiffs eligible for counsel fees. We conclude that a construction of the term "in substantial part” which is consistent with that intent is appropriate under the circumstances. Therefore, we hold that a party has "prevailed” within the meaning of the State EAJA if it has succeeded in acquiring a substantial part of the relief sought in the lawsuit. Thus, a "prevailing party” is not one who has succeeded on merely "any significant issue” in the litigation which achieved only "some of the benefit” sought in bringing the lawsuit — which is the Federal standard (Hensley, supra, at 433). Rather, it is a plaintiff who can show that it succeeded in large or substantial part by identifying the original goals of the litigation and by demonstrating the comparative substantiality of the relief actually obtained. Lower court decisions which have applied the more generous Federal “prevailing party” standard are not to be followed in that respect (see, e.g., Matter of Centennial Restorations Co. v Abrams, 202 AD2d 721, supra; Matter of NANCO Envtl. Servs. v New York State Dept. of Envtl. Conservation, 149 Misc 2d 991, 994-995, supra).
Applying this standard, we conclude that petitioner was not a prevailing party. The dominant focus of this litigation from its inception was securing the continued availability of Medicaid reimbursement for independent laboratory tests ordered as panels and profiles. Indeed, petitioner sought to invalidate respondent’s amended regulation on either of two grounds— that it lacked a rational basis or was violative of equal protection. Petitioner was unsuccessful on both those grounds. The one issue upon which petitioner ultimately prevailed did not affect the validity of the amended regulation. Rather, it established that respondent’s interpretation of the regulation as permitting the grouping of tests on order sheets only in categories approved by the American Medical Association was not in harmony with the plain language and administrative history of the regulation. Thus, although petitioner succeeded in correcting an improper interpretation of the amended *356 regulation, it failed to win a substantial part of the relief originally sought in bringing the lawsuit.
III
Substantially Justified
Even assuming arguendo that petitioner satisfied the prevailing party threshold to fee recovery under the State EAJA, the State’s position in this litigation was substantially justified. The phrase "substantially justified” has been interpreted by the Supreme Court as meaning "justified to a degree that could satisfy a reasonable person”, or having a " 'reasonable basis both in law and fact’ ” (Pierce v Underwood, 487 US 552, 565, supra). Moreover, absent an abuse of discretion, a determination by the lower courts that the Government’s position was substantially justified is entitled to deference (id., at 562-563). The legislative history of the State EAJA indicates that New York courts should look to the Pierce decision when determining whether the State’s position was "substantially justified” (see, Assembly Mem, 1989 NY Legis Ann, at 335 ["The test of whether or not a government action is substantially justified is essentially one of reasonableness. Where the government can show that its case had a reasonable basis both in law and fact, no award will be made”]; Governor’s Approval Mem, op. cit., 1989 NY Legis Ann, at 336 [indicating that Pierce’s interpretation of "substantially justified” should be followed in interpreting State statute]).
Petitioner argues that respondent’s position in this case cannot be considered "substantially justified” in light of its irrational interpretation of the amended regulation. In Roanoke Riv. Basin Assn. v Hudson (991 F2d 132, cert denied — US —, 114 S Ct 182), as in this case, the plaintiff prevailed on one issue while the government agency prevailed on all others. The Court of Appeals for the Fourth Circuit affirmed the District Court’s denial of attorney’s fees on the ground that the position of the government agency was substantially justified, rejecting "a per se rule that whenever a petitioner clearly prevails on any issue, a fee award follows” (id., at 139). The court concluded that it was appropriate to consider the government’s position in the case as a whole when determining the reasonableness of its position:
"We do not think these two prongs of the EAJA— whether the petitioner is a prevailing party and *357 whether the government’s position is substantially justified — were intended to be so closely linked. * * * The focus when determining whether a petitioner is a prevailing party is aimed at the degree of success obtained by the petitioner. Whether the government’s ’position in the litigation’ is substantially justified, in contrast, focuses, not on the government’s success or failure, but on the reasonableness of its position in bringing about or continuing the litigation. While the EAJA redresses governmental abuse, it was never intended to chill the government’s right to litigate or to subject the public fisc to added risk of loss when the government chooses to litigate reasonably substantiated positions, whether or not the position later turns out to be wrong. In short, the policy considerations underlying these two prongs of the EAJA differ, justifying the different scopes of focus” (id.; see, Commissioner, Immigration & Naturalization Serv. v Jean, 496 US 154, 161-162, supra [’’While the parties’ postures on individual matters may be more or less justified, the EAJA — like other fee-shifting statutes — favors treating a case as an inclusive whole, rather than as atomized line-items”]).
We agree with the Fourth Circuit Court of Appeals that an issue-by-issue analysis of the government’s posture in the litigation should be rejected in favor of ”a more broadly focused analysis that would reject the view that any unreasonable position taken by the government in the course of litigation automatically opens the door to an EAJA fee award” (Roanoke, supra, at 139; see also, Assembly Mem, op. cit, 1989 NY Legis Ann, at 335 [substantially justified standard ’’should not be read to raise a presumption that the State’s position was not substantially justified simply because it lost the case”]).
Turning to the present case, we note that the central controversy concerned the validity of the change in payment methodology embodied in the amended regulation. In this respect, respondent’s position was completely vindicated. Although petitioner gained the benefit of an ameliorative measure — correction of respondent’s overbroad interpretation of the amended regulation — when respondent’s position is considered in its entirety, the only logical conclusion is that it was *358 substantially justified, i.e, it had a reasonable basis in both fact and law (see, Pierce, supra). Thus, the Appellate Division did not abuse its discretion in refusing to award attorney’s fees under the circumstances of this case.
Finally, we conclude that the remaining issues raised by petitioner were correctly resolved by the Appellate Division.
Accordingly, the order of the Appellate Division should be affirmed, with costs.
Chief Judge Kaye and Judges Simons, Titone, Bellacosa, Smith and Levine concur.
Order affirmed, with costs.