Matter of Criss v New York State Dept. of Health (2021 NY Slip Op 01642)





Matter of Criss v New York State Dept. of Health


2021 NY Slip Op 01642


Decided on March 19, 2021


Appellate Division, Fourth Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on March 19, 2021
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Fourth Judicial Department

PRESENT: CARNI, J.P., LINDLEY, WINSLOW, BANNISTER, AND DEJOSEPH, JJ.


915 CA 19-01544

[*1]IN THE MATTER OF JAMES CRISS, INDIVIDUALLY AND ON BEHALF OF HIS SON, MILES CRISS, PETITIONER-RESPONDENT,
v
NEW YORK STATE DEPARTMENT OF HEALTH, OFFICE OF TEMPORARY AND DISABILITY ASSISTANCE, SAMUEL ROBERTS, COMMISSIONER, AND NEW YORK STATE OFFICE FOR PEOPLE WITH DEVELOPMENTAL DISABILITIES, RESPONDENTS-APPELLANTS. 






LETITIA JAMES, ATTORNEY GENERAL, ALBANY (JONATHAN D. HITSOUS OF COUNSEL), FOR RESPONDENTS-APPELLANTS.
CUDDY LAW FIRM, P.L.L.C., AUBURN (BENJAMIN M. KOPP OF COUNSEL), FOR PETITIONER-RESPONDENT. 


 Appeal from a judgment of the Supreme Court, Steuben County (Robert B. Wiggins, A.J.), entered June 17, 2019 in a proceeding pursuant to CPLR article 78. The judgment, insofar as appealed from, granted in part petitioner's application seeking fees and expenses. 
It is hereby ORDERED that the judgment insofar as appealed from is unanimously reversed on the law without costs, the application is denied in its entirety, and the award of fees and expenses is vacated.
Memorandum: Petitioner commenced this CPLR article 78 proceeding seeking to annul the decision of respondent New York State Department of Health, issued following a fair hearing, that upheld the initial determination of respondent New York State Office for People with Developmental Disabilities (OPWDD) denying petitioner's application for a home-based community services waiver. Prior to commencing this proceeding, petitioner sought reconsideration of OPWDD's determination from respondent Office of Temporary and Disability Assistance (OTDA). After this proceeding was commenced, OTDA issued an amended decision on reconsideration vacating OPWDD's determination and granting petitioner's application. The parties agree that the amended decision rendered the CPLR article 78 proceeding moot. Nevertheless, petitioner's attorneys filed a motion seeking an award of attorneys' fees and expenses under the New York State Equal Access to Justice Act ([EAJA] CPLR 8600 et seq.), "under the 'catalyst theory,' which posits that a plaintiff [or a petitioner] is a 'prevailing party' if it achieves the desired result because the lawsuit brought about a voluntary change in the defendant's conduct" (Buckhannon Board & Care Home, Inc. v West Virginia Dept. of Health & Human Resources, 532 US 598, 601 [2001]). Supreme Court granted the application in part, awarding petitioner some measure of attorneys' fees and expenses. We agree with respondents that the court erred in awarding any fees or expenses, and we therefore reverse the judgment insofar as appealed from, deny the application in its entirety, and vacate the award of fees and expenses.
The State EAJA was enacted in 1989, and it was generally "modeled after" the Federal EAJA (Matter of New York State Clinical Lab. Assn. v Kaladjian, 85 NY2d 346, 353 [1995] [hereinafter Kaladjian]; see 28 USC § 2412 [d] [1] [A]). In pertinent part, the statute provides that "a court shall award to a prevailing party, other than the state, fees and other expenses incurred by such party in any civil action brought against the state, unless the court finds that the position of the state was substantially justified or that special circumstances make an award [*2]unjust" (CPLR 8601 [a] [emphasis added]). The statute defines a "[p]revailing party" as "a plaintiff or petitioner in the civil action against the state who prevails in whole or in substantial part where such party and the state prevail upon separate issues" (CPLR 8602 [f]). The application for fees and expenses must be made "within thirty days of final judgment in the action" (CPLR 8601 [b] [emphasis added]), and a "[f]inal judgment" is defined as "a judgment that is final and not appealable, and settlement" (CPLR 8602 [c]). The intent of the statute was to put small businesses, not-for-profit businesses, and individuals with limited resources on equal footing with the State when the State's administrative position was unjustified (see Letter from Assemblymember Robin Schimminger, Sept. 21, 1989, Bill Jacket, L 1989, ch 770 at 6).
Although it is modeled after the Federal EAJA, the state statute differs from the federal statute in several notable respects. The scope of the state statute "is far narrower than that of the federal statute"; the federal statute does not contain any definition of a prevailing party; and the federal statute defines a final judgment to include " 'an order of settlement' " (Matter of Solla v Berlin, 106 AD3d 80, 87 [1st Dept 2013], revd 24 NY3d 1192 [2015], rearg denied 25 NY3d 1063 [2015] [emphasis added], quoting 28 USC § 2412 [d] [1] [D] [2] [G]). As a result of those differences, the Court of Appeals opined that "the Legislature's departure from the Federal EAJA . . . evinces an intent to impose a stricter standard for demonstrating prevailing party status under the State EAJA than under its Federal counterpart" (Kaladjian, 85 NY2d at 354 [emphasis added]). The Court wrote that, "as it specifically relates to the term 'prevailing party,' the legislative history suggests that the State EAJA's departure from the Federal model was intended to limit the State's liability for fee awards" (id. at 355).
The problem is that the State EAJA specifically provides that it was intended "to create a mechanism authorizing the recovery of counsel fees and other reasonable expenses in certain actions against the state of New York, similar to the provisions of federal law contained in 28 USC § 2412 (d) and the significant body of case law that has evolved thereunder" (CPLR 8600 [emphasis added]; see Letter from Assemblymember Robin Schimminger, Oct. 4, 1989, Bill Jacket, L 1989, ch 770 at 8). At the time the State EAJA was enacted, "the 'significant body' of case law across the country and in New York that had interpreted the Federal EAJA routinely applied the catalyst theory" (Solla, 106 AD3d at 87).
In 2001, however, the Supreme Court of the United States rejected the catalyst theory as a basis for an award of attorneys' fees and expenses under the fee-shifting provisions of the Fair Housing Amendments Act of 1988 ([FHAA] 42 USC § 3613 [c] [2]) and the Americans with Disabilities Act of 1990 ([ADA] 42 USC § 12205), holding that the term prevailing party, which is a legal term of art and is used in numerous other federal statutes (see Buckhannon, 532 US at 602-603), required that there be relief awarded by a court, i.e., a "judicially sanctioned change in the legal relationship of the parties" (id. at 605). Inasmuch as the Federal EAJA contains no definition of "prevailing party" so as to distinguish the EAJA from the FHAA and the ADA, federal courts have applied Buckhannon to Federal EAJA cases and have denied any award of attorneys' fees or expenses under the catalyst theory (see e.g. Aronov v Napolitano, 562 F3d 84, 88-89 [1st Cir 2009], cert denied 558 US 1147 [2010], reh denied 559 US 964 [2010]; Ma v Chertoff, 547 F3d 342, 344 [2d Cir 2008]; Goldstein v Moatz, 445 F3d 747, 751 [4th Cir 2006]; Brickwood Contrs., Inc. v United States, 288 F3d 1371, 1379 [Fed Cir 2002], cert denied 537 US 1106 [2003]).
Shortly after the Supreme Court's decision in Buckhannon, the First Department applied it to a State EAJA case without much discussion (see Matter of Auguste v Hammons, 285 AD2d 417, 418 [1st Dept 2001]), and other Departments followed suit, rejecting the catalyst theory as a basis for an award under various fee-shifting statutes (see Matter of Vetter v Board of Educ., Ravena-Coeymans-Selkirk Cent. School Dist., 53 AD3d 847, 849 [3d Dept 2008], affd as modified 14 NY3d 729 [2010]; Matter of Wittlinger v Wing, 289 AD2d 171, 171 [1st Dept 2001], affd on other grounds 99 NY2d 425 [2003]; Murrin v Ford Motor Co., 303 AD2d 475, 477 [2d Dept 2003]). The Court of Appeals affirmed that part of the Third Department's decision in Vetter denying the petitioner counsel fees, but that appeal addressed counsel fees under a federal statute (see Vetter, 14 NY3d at 732). In affirming the First Department in Wittlinger, the Court of Appeals determined that the petitioner was not entitled to attorneys' fees because the State's position was substantially justified (99 NY2d at 429). The Court thus declined to "reach the 'catalyst' issue and Buckhannon's impact on the interpretation of the [State EAJA]" (id. at 433).
In 2013, however, the First Department overruled Auguste after noting that the parties in Auguste were not afforded an opportunity to address the issue inasmuch as Buckhannon was decided after Auguste was briefed and argued (see Solla, 106 AD3d at 82). The Court wrote that it had not "focused on the qualitative differences between the two statutes" (id.). The Court of Appeals reversed the First Department on different grounds, stating that it was "unnecessary for [the Court] to decide whether the catalyst theory is New York law" and that it took "no position on that question at this time" (Solla, 24 NY3d at 1196).
The Second Department, in contrast, has consistently rejected application of the catalyst theory (see Matter of Gonzalez v New York State Dept. of Corr. & Community Supervision, 152 AD3d 680, 682-683 [2d Dept 2017]; Murrin, 303 AD2d at 477; Pastore v Sabol, 230 AD2d 835, 837 [2d Dept 1996]). In Gonzalez, the Court wrote that the petitioner in that case could not be considered a " 'prevailing party' under CPLR 8601 (a) and 8602 (f)" because the so-ordered stipulation entered in that case "did not reflect a material change in the legal relationship between the parties because the petitioner's claims had already been rendered moot by [the administrative agency's] voluntary decision" to vacate the earlier decision (152 AD3d at 683). "No material alteration of the legal relationship between the parties occurs until the [petitioner] becomes entitled to enforce a judgment, consent decree, or settlement against the [respondent]" (Farrar v Hobby, 506 US 103, 113 [1992]).
Although the Gonzalez decision did not mention the catalyst theory by name in its holding, the language and citations used leave no doubt that the Court rejected the catalyst theory of recovery under the State EAJA. Indeed the Court cited to, inter alia, Pastore (230 AD2d at 837) and Ma (547 F3d at 344), cases in which the Courts specifically rejected application of the catalyst theory in State and Federal EAJA cases.
This Court has yet to address the issue, but we now reject application of the catalyst theory in State EAJA cases. Where, as here, litigation is rendered moot by an administrative change in position, the petitioner or plaintiff has not prevailed "in the civil action" (CPLR 8602 [f]). As the Court of Appeals wrote in Kaladjian, "[t]he case law formulation that has developed around the term 'prevailing party' considers whether the parties ' "succeed[ed] on any significant issue in litigation which achieve[d] some of the benefit the parties sought in bringing suit" ' " (85 NY2d at 352 [emphasis added], quoting Hensley v Eckerhart, 461 US 424, 433 [1983]).
Petitioner correctly notes that CPLR 8600 provides that the State EAJA was intended to provide recovery in a manner similar to the Federal EAJA and the "significant body of case law that has evolved thereunder" and that, at the time the State EAJA was enacted, the catalyst theory was routinely applied to Federal EAJA cases (see Buckhannon, 532 US at 602 n 3). The language of the statute, however, requires a party to prevail "in the civil action" (CPLR 8602 [f]; see Assembly Mem in Support, Bill Jacket, L 1989, ch 770 at 10). Here, petitioner did not obtain a "[f]inal judgment," i.e., an enforceable judgment or settlement (CPLR 8602 [c]; cf. Matter of Wright v New York Off. of Children & Family Servs., 2003 NY Slip Op 51083 [U] [Sup Ct, Erie County 2003]), and thus did not prevail "in the civil action" (CPLR 8602 [f]). Inasmuch as fee-shifting provisions are an exception to the "American Rule," they must be strictly construed (see Baker v Health Mgt. Sys., 98 NY2d 80, 88 [2002], rearg denied 98 NY2d 728 [2002]; Fiala v Metropolitan Life Ins. Co., 6 AD3d 320, 323-324 [1st Dept 2004]). It is for the legislature, not the courts, to decide whether the statute should be broadened to include fee awards to parties whose lawsuits serve as the catalyst for a voluntary change in the agency's determination.
Entered: March 19, 2021
Mark W. Bennett
Clerk of the Court